**In The Matter of William J. DOYLE, Bankrupt.**

**No. 65 B. 335.**

United States District Court
S. D. New York.

Aug. 10, 1967.

Sidney Reich, White Plains, N. Y., for petitioners.

## MEMORANDUM

TENNEY, District Judge.

Bankrupt William J. Doyle filed a Petition in Bankruptcy on April 27, 1965. On or about July 20, 1965, the petitioners herein, Carmine Solimine, the Trustee in Bankruptcy, and Agency Tile Supply Westchester Corporation, the largest creditor of the bankrupt, filed joint specifications objecting to any discharge of the bankrupt. Hearings upon such objections were held before the Honorable Arthur J. Doran, the Referee in Bankruptcy, after which said Referee signed an order, dated December 30, 1966, granting the bankrupt a discharge.

Petitioners now move for review of the Referee's order,[1] claiming it was erroneous in ten respects. However, all of the assignments of error can be placed into three categories of objections: (1) The bankrupt, for business purposes, obtained money on credit from two loan companies, by making materially false statements in writing respecting his financial condition; (2) the bankrupt falsely stated under oath that he had not issued any financial statements within two years immediately preceding the filing of his Petition in Bankruptcy when, in fact, he had issued such statements to two loan companies; and (3) the bankrupt failed to keep or preserve adequate books of account or records, from which his financial condition and business transactions might be ascertained. The Court now proceeds to a consideration of each of these objections.

The credit transactions which give rise to the first objections were transactions entered into by the bankrupt with Pioneer Finance Co., Inc. (hereinafter referred to as "Pioneer") on January 5, 1965, and with Household Finance Corp. (hereinafter referred to as "Household") on December 21, 1964. The Referee found that on both these occasions the bankrupt, in his application for the loans, failed to list at least four other creditors to which he was indebted at that time. The Referee determined that the financial statements submitted to Pioneer and Household were false, but nevertheless refused to bar discharge on this ground for the reason that "the loans of Pioneer and Household were made to the bankrupt on a personal basis and were not business loans."

Section 14(c) (3) of the Bankruptcy Act, as amended, 79 Stat. 646 (1965), 11 U.S.C. § 32 (1964), provides that a bankrupt may be denied a discharge if he has:

"(3) *while engaged in business as a sole proprietor, partnership, or as an executive of a corporation,* obtained *for such business* money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a mate-

---

1. There is no question the petition for review is timely although not brought within the ten-day period set forth in Section 39 of the Bankruptcy Act (52 Stat. 858 (1938), 11 U.S.C. § 67 (1964)). Since copies of the Referee's order were not mailed to the objecting creditors until sometime after December 30, 1966, Referee Doran extended the time during which the creditors could file a petition for review.

rially false statement in writing respecting his financial condition *or the financial condition of such partnership or corporation*". (Emphasis added.)

The italicized provisions were added to Section 14(c) (3) by a 1960 amendment so that a discharge would be barred only where the money or property was falsely obtained for the bankrupt's business. As stated by Referee Doran:

> The reasons for the amendment are set forth in Senate Report No. 1688, 86th Cong. 2d Sess. (1960) [U.S.Code Cong. & Admin.News 1960, p. 2954] which is quoted in 1 Collier on Bankruptcy (14th Ed.) p. 1376. In brief, the Senate Report explains that a complete denial of a discharge is too severe a penalty for the non-commercial bankrupt. The hearings on the Bill disclosed the practice of unscrupulous lenders condoning and even encouraging the issuance of a false financial statement for use in the event the borrower subsequently went into bankruptcy. The amendment retains the effect of a false statement on the business bankrupt. Of particular importance, and especially in the instant proceeding, is the added requirement that the money or property be falsely obtained for the bankrupt's business.

After a hearing, the Referee determined that the Pioneer and Household loans were not obtained by the bankrupt for his business "which is an essential element under Section 14(c) (3)" and hence he did not deem it necessary to "pass upon the question as to whether all of the other essential elements necessary to bar the bankrupt's discharge, e. g., reliance by the lenders, have been established in support of the Specifications."

■ After careful consideration, the Court holds that the Referee's finding on this issue was "clearly erroneous" within the meaning of General Order 47 following Section 30 of the Bankruptcy Act, 30 Stat. 554 (1898), 11 U.S.C. § 53 (1964), and, hence, the proceeding must be remanded for further consideration. The Court reaches this conclusion for the following reasons. The Referee found that the bankrupt was a self-employed tile setter and used his home as headquarters for his one-man operation. The finding that the loans obtained by the bankrupt were not for his tile business was based largely on statements by officers of Pioneer and Household who testified that at the time the loans were granted they knew they were not making a business loan to the bankrupt. However, both witnesses further testified that, by law, their companies were not permitted to extend business loans. Hence, the Referee reasoned that since these companies were not permitted to extend business loans, the loans given bankrupt were personal loans.

The Court cannot accept such a bootstrap argument. If a loan company is prohibited by law from making business loans, the self-serving declarations of officers of the company can be given little weight. This also explains why both Pioneer and Household failed to make an extended inquiry into the financial condition of bankrupt's business, a factor which the Referee deemed significant. Also, that one loan from Household was for only $173 does not justify a conclusion that such a small loan could not possibly be for business purposes.

■ Bankrupt's occupation as a self-employed tile setter clearly meets the "engaged in business" requirement of Section 14(c) (3). See In re Simms, 202 F.Supp. 911 (E.D.Va.1962). Furthermore, the evidence has shown that the loans were obtained for such business. The bankrupt testified that part of his loan from Pioneer was used to pay his telephone bill and that he had but one telephone which was for both business and personal use. The bankrupt further testified that part of the proceeds of said loan was used to pay back money which he had borrowed from his mother, part of which had been used to pay the gasoline bills for his car. The bankrupt admitted that he used his car for business as well as pleasure trips.

He further stated that a portion of the loan was deposited in his checking account and that, at times, checks were drawn on such account to pay his business debts.

■ Where at least a portion of the money received from a loan company is used for the purpose of running the bankrupt's business, the money is "obtained for such business" within the meaning of Section 14(c) (3). See In re Branch, 242 F.Supp. 534 (E.D.Tenn. 1964), aff'd, Branch v. Mills & Lupton Supply Co., 348 F.2d 991 (6th Cir. 1965), cert. denied, 382 U.S. 997, 86 S.Ct. 584, 15 L.Ed.2d 484 (1966). Here, there is no question that a portion of the money the bankrupt received from the loan companies was used for his tile business. Furthermore, when a bankrupt is an individual proprietor, it is very difficult to separate his business from his private and personal dealings. Under these circumstances, and in the absence of any showing by the bankrupt that the money he received was used solely for his personal affairs, the Court is constrained to hold that the Referee's determination on this issue was clearly erroneous.

■ As regards the other two objections, the Court finds them without merit. At the hearing before the Referee, testimony elicited the fact that the incorrect answer which the bankrupt gave when asked whether he had issued any financial statements within two years of the filing of his Petition in Bankruptcy was due to a typographical error by the bankrupt's attorney or by his secretary. The bankrupt's testimony indicated that he was unable to account for the "No" answer to the question, since he had readily admitted making the loan applications which contained the financial statements. At any rate, based on the record before this Court, I hesitate to impugn such dishonesty to the bankrupt.

■ Finally, the Court agrees with the Referee's finding that the bankrupt's books and records were in a "wretched" condition, but to deny him a discharge on this basis would be unreasonable and unwarranted. Considering the fact that the bankrupt had been experiencing financial difficulties over the past several years and that he was engaged in what the Referee aptly called a "hand-to-mouth" business operation, the meager records produced by bankrupt are sufficient. The fact that the bankrupt was able to produce only a box of miscellaneous cancelled checks and bank statements, along with an uninformative spiral notebook, may partially be explained by the fact that he lacked a proper education which would enable him to keep more complete and accurate records. That bankrupt may have unwittingly destroyed or lost some of his other papers over the past few years is not sufficient reason to deny him a discharge. Hence, in the circumstances of this case, the bankrupt's failure to keep adequate books and records is justified. See Minella v. Phillips, 245 F.2d 687 (5th Cir. 1957).

For the foregoing reasons, the Referee's order of December 30, 1966 is affirmed in all respects except with regard to his finding that the bankrupt did not obtain the loans from Household and Pioneer for business purposes. Since the Court has determined that such loans were granted for the bankrupt's tile business, the proceeding is remanded to the Referee to consider whether the other elements of a Section 14(c) (3) violation such as materiality of the false statements and reliance by the lenders have been satisfied.

So ordered.