**In the Matter of Louis C. OSTRER, Bankrupt-Appellant,**

**The Meadow Brook National Bank, Objecting Creditor-Appellee.**

**No. 337, Docket 32021.**

United States Court of Appeals Second Circuit.

Argued March 12, 1968.

Decided April 19, 1968.

Ryan, District Judge, dissented.
See also D.C., 216 F.Supp. 133.

Joseph Lewis Simon, New York City, for appellant.

Anthony J. D'Auria, New York City (Edward N. Meyer, Cole & Deitz, New York City, on the brief), for appellee.

Before KAUFMAN and HAYS, Circuit Judges, and RYAN, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

The bankrupt, Louis C. Ostrer, appeals from a judgment of the District Court for the Eastern District of New York, reversing an order of the Referee discharging the bankrupt because the Referee misapplied the proper test for what constitutes a "materially false statement" of financial condition within the meaning of § 14c.(3) of the Bankruptcy Act, 11 U.S.C. § 32(c) (3).

The bankrupt was engaged in the business of selling life insurance as a broker in his own name and as a general agent under the name of Louis C. Ostrer Associates, Inc. He was an executive and sole stockholder of this corporation as well as of Citizens Factors Corporation, a money lending business. During the period from November 16, 1960 to February 8, 1962 the bankrupt obtained from Meadow Brook National Bank, the objector in these proceedings, moneys aggregating in excess of $350,000 for the use of his insurance and money lending enterprises.

On May 8, 1961 the bankrupt signed a personal balance sheet (financial statement) for the period ending May 1, 1961 prepared by Ben Wolf, a Certified Public Accountant, and delivered it to the Bank as he was requested to do. The statement recited that it was an unaudited statement and appears upon its face to have been an approximation or estimate rather than an exact statement of assets, liabilities and net worth.

On November 20, 1964 appellant filed a voluntary petition in bankruptcy in the Eastern District of New York and on the same day was duly adjudicated bankrupt. Subsequently, specifications of objections to a discharge in bankruptcy were filed by the creditor Meadow Brook alleging that appellant, while engaged in business as a sole proprietor and as an executive of a corporation, obtained moneys and an extension and renewal of credit by issuing a materially false statement in writing respecting his financial

---

* Of the District Court for the Southern District of New York, sitting by designation.

condition, allegations which, if proved, would bar appellant from a discharge under § 14c.(3) of the Bankruptcy Act.

The statement of financial condition submitted by the bankrupt to the Bank was deficient in several particulars: It failed to list a contingent liability of $90,-000 due to objector, which arose from an endorsement by the bankrupt of third-party paper, payable to the bankrupt and discounted by Meadow Brook, and also failed to list the third-party paper as an asset. In addition, it failed to include other assets in the amount of $259,933.93 comprised of corporate shares held in the bankrupt's name or for his account, together with the proceeds of recent sales of stock. There was also evidence that figures used for personal renewal commissions were computed at a projected rate which in many instances was less than actually prevailed under the applicable insurance contracts.

On the other hand, the statement erroneously included the sum of $90,300, representing the value of a residence in Great Neck, New York, which was owned by Ostrer's wife, as well as a deferred asset of $150,000 in renewal commissions which were due to his wholly owned corporation and not to the bankrupt. Moreover, it listed as an asset the combined value of three automobiles, one of which was registered in the name of his wife, although no exact value was assigned to the wife's car. Also included was a burglary claim against an insurance company, discounted at $20,000, which covered some items of property belonging to the bankrupt's wife. The actual claim, the Referee found, was for $27,500 and was settled for $9,500 sometime after May 1, 1961. Due to a confusion of names, the statement showed bankrupt as owning 1,000 shares of Citizens Life Insurance Company when, in fact, he owned only 550 such shares, and as being the owner of 250 shares of Citadel Life Insurance Company when, in fact, he owned 750

shares of such stock. The combined value of the shares of stock in these companies which he did own was equal to the combined value of the shares of these companies which he listed as being owned by him.

The Referee after a hearing found as a fact that none of the financial statement's inclusions or exclusions indicated an intention by Ostrer to deceive or defraud the Bank. He concluded that the statement was not made for the purpose or with the intention of deceiving or defrauding the objecting creditor and that the statement was not knowingly and intentionally untrue or false within the meaning of § 14 of the Bankruptcy Act. The Referee laid particular stress on the fact that, in any event, the bankrupt's actual net worth, after subtracting $240,000 (the combined amount of the value of the residence and the renewal commissions due to the corporation and erroneously included in the statement), exceeded by approximately $20,000 the net worth reflected in the statement. Not only were the assets erroneously included more than balanced by the omitted other assets, but the bankrupt appears to have significantly undervalued some of the assets included, notably the value of the personal renewal commissions. Moreover, Ostrer carefully segregated the value of his personal renewal commissions from the value of the corporate renewal commissions and made no attempt to conceal the fact that the latter were included in the statement. Nor did he attempt to double-count or inflate his assets by placing any value on his interest as sole shareholder in the corporation beyond the value of the corporate renewal commissions.

Recognizing that the Bank had made out a prima facie case under § 14c.(3), the Referee concluded that the bankrupt had carried his burden of proof in defense by negating any intention on his part to deceive or defraud the bank.[1]

1. In this Circuit the findings of a referee in bankruptcy are to be upheld unless "clearly erroneous" under the test of

Rule 52(a) F.R.Civ.P. On an issue like intent to deceive, where the bankrupt's credibility is an important factor,

The District Judge found it unnecessary to review the Referee's findings of fact, having concluded that the Referee erred as a matter of law in his interpretation of the requirements of § 14c.(3). Where, as here, it is conceded that the bankrupt had actual knowledge that the statement was incorrect, that knowledge, the Court held, is sufficient to constitute a "materially false" statement of financial condition within the meaning of § 14. The District Court found it of no moment and legally irrelevant that there was no intent to deceive the Bank and that the bankrupt's actual net worth exceeded that shown on the statement. We conclude that the District Court's decision is out of harmony with the prevailing rationale of the Bankruptcy Act and with the generally accepted interpretation of § 14c.(3).

The provisions of the Bankruptcy Act created the broad discharge medicament for the financially sick debtor. It was designed by Congress to give that debtor, hopelessly mired in debt, an opportunity for a fresh start. Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1933). The denial of a discharge under § 14c.(3) of the Act is a most punitive measure directed against bankrupts who have obtained credit on the basis of intentionally false statements. See, e. g., In re Lovich, 117 F.2d 612, 614 (2d Cir. 1941); In re Rosenfeld, 262 F. 876 (2d Cir. 1919). We noted in In re Tabibian, 289 F.2d 793, 795 (1961):

> In weighing the facts put forward in a contest over a discharge * * * a court should keep in mind the beneficial policy allowing the honest debtor to get a new start in business and life—and should construe § 14 strictly against the objectors and liberally in favor of the bankrupt.

See also Gross v. Fidelity & Deposit Co. of Maryland, 302 F.2d 338, 340 (8th Cir. 1962).

the referee's findings should be accorded great weight since he had an opportunity to hear and observe the bankrupt.

While it is true in the ordinary case, that the publication by a bankrupt of a financial statement known to be incorrect will ordinarily involve an intent to deceive or defraud—e. g., the debtor who deliberately inflates assets or who carefully conceals substantial outstanding liabilities in an attempt to obtain fresh credit—we cannot be unmindful that the Referee found no such attempt to deceive here. On the contrary, the Referee found that the statement only appeared to be an estimate or approximation. Moreover, the financial statement was one of a series delivered to the Bank before and after the statement in question and at no time was any issue raised by the Bank on any items. At most, the Referee concluded, it appeared that the bankrupt, because of his special relationship with the Bank, had become somewhat careless in his preparation of the statements and, in particular, as to which assets and liabilities were or should be scheduled.

A financial statement which is merely erroneous but is not prepared with any intention to deceive, is not a false statement within the meaning of § 14c.(3). 1 Collier on Bankruptcy ¶ 14.40 (14th ed. 1967); Feldenstein v. Radio Distributing Co., 323 F.2d 892 (6th Cir. 1963); Schapiro v. Tweedie Foot Wear Corporation, 131 F.2d 876, 878 (3d Cir. 1942); Third Nat'l Bank v. Schatten, 81 F.2d 538, 540 (6th Cir. 1936). The Referee found, and the District Court did not disagree, that the entries complained of here were admittedly erroneous but involved no intent to deceive.

Although the Referee was particularly impressed by the existence of substantial "balancing assets," it is clear that he considered such evidence only for its bearing on the question of the bankrupt's intent to deceive. In view of the disposition we make of this case, we find it unnecessary to examine the sufficiency of the Referee's findings of fact; nor

In re Tabibian, 289 F.2d 793, 795 (2d Cir. 1961).

do we express any view on whether the presence of "balancing assets" *per se* will cure a financial statement materially false on its face. Cf., In re Keller, 86 F.2d 90, 91 (2d Cir. 1936); In re Maaget, 245 F. 804 (S.D.N.Y.1911).

█ We hold simply that where, as here, the findings of the Referee that the bankrupt's financial statement, although erroneous, was not published with any intent to deceive or defraud his creditors, have not been found erroneous by the District Judge, the bankrupt has not published a "materially false" financial statement within the meaning of § 14c.(3) of the Bankruptcy Act.

The cases relied upon by the District Judge for his holding, Morimura, Arai & Co. v. Taback, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1929); Industrial Bank of Commerce v. Bissell, 219 F.2d 624 (2d Cir. 1955); and Fidelity & Deposit Co. of Maryland v. Browder, 291 F.2d 34 (5th Cir. 1961), are clearly distinguishable. We read none of these cases as dispensing with the requirement of culpable intent. The financial statement involved in *Morimura, Arai & Co.*, supra, was utterly irreconcilable with the financial condition of the company as disclosed by its own books. The bankrupts there offered no evidence to account for the discrepancies, nor did they make any attempt to show the existence of any assets not carried on the books or that they were not indebted for any of the liabilities established. The facts there, as well as in Industrial Bank of Commerce v. Bissell and Fidelity & Deposit Co. of Maryland v. Browder, supra, are clearly consistent with a finding of culpable intent.

Meadow Brook, however, also challenges several of the Referee's findings, particularly the Referee's valuation of "balancing assets." Since the District Court did not pass upon the Referee's findings because the Court erroneously construed the requirements of § 14c.(3), we are remanding the case to the District Court. Upon such remand the appellee may avail itself of the opportunity to challenge the Referee's findings.

Reversed and remanded.

RYAN, District Judge (dissenting):

The judgment appealed from which reversed the order of the Referee and which denied the bankrupt a discharge should be affirmed.

This Court's decision is based on an assumption which is not supported by either the facts or the Bankruptcy Act, which is that the admittedly false statement was not given with intent to deceive because it was but an approximation or estimate of the bankrupt's net worth, rather than an exact statement.

Nothing on the face of the personal balance sheet for the period of May 1, 1961 suggests that it was an approximation or estimate, rather than an exact statement.[1] That it was signed by an accountant belies that fact that it was but a guess, and the accountant's statement that it was not audited does not give weight to any such inference. Quite the contrary might be said as to the fact of the accountant's signature under the statement, i. e., that this purported to be an accurate and reliable listing of assets and liabilities.

The trial record before the Referee also shows that on May 1, 1961 the status of the Louis Ostrer account with the bank was $191,260.01 outstanding indebtedness made up of $50,000 unsecured loans, $55,000 owed through discounting of Receivables, and $84,000 on

---

1. There was reference by counsel to "round sums" in the statement of May 1, 1961. The plain fact is that it contains no "round sums." An examination of the statement reveals that only cents are omitted, but the assets are stated down to tens and dollars. Note, for example: "Notes Receivable from Clients $21,357.00"; "Commissions due Canada Life $16,329.00"; "Total current assets $461,836.00"; and "Total Assets $1,220,636.00"; these are not "round" figures. It also appears from the bankrupt's testimony and exhibits that these figures were the result of his listed itemized calculations.

secured loans. This May 1, 1961 statement was delivered to the bank on May 10, 1961 when the aggregate indebtedness was $206,192.28. This indebtedness increased with the reliance of the bank on the May 1, 1961 statement so that on January 29, 1962 Ostrer owed the bank a total of $267,839.36.

The Referee specifically found:

1. The financial statement (of May 1, 1961) which shows a net worth of $1,064,061 was erroneous to the extent that his assets were less by the sum of at least $240,300, if not more, than stated.

2. That the testimony of a former Vice President of the creditor clearly indicated that he, as the person who approved the loans to the bankrupt and to his corporations, relied partially upon the aforesaid financial statement.

3. That the objecting creditor established the issuance of a materially false statement in writing by the bankrupt to obtain credit or an extension of credit to the extent of approximately $350,000 for himself and his corporation at a time when he was engaged in business individually and as an executive of corporations.

The three elements defined in this Court in Industrial Bank of Commerce v. Bissell, 219 F.2d 624, as sufficient to sustain an objection to discharge—(1) that the bankrupt for the purpose of establishing credit made a written statement respecting his financial condition; (2) that such statement was materially false; and (3) that it was relied upon by the objecting creditor—appear here in the clearest possible light.

No question is raised as to elements (1) and (3), and I cannot understand why the second element is found missing merely because, later after obtaining the credit, the bankrupt says that, although false, the statement was but an approximation. No authority has been cited and certainly the Bankruptcy Act makes no exception of false statements because they are but estimates. Quite the contrary, for the Act includes statements made "with reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct"— a definition which certainly encompasses an approximation or estimate.

Whether an approximation or estimate, or an audited statement, it was knowingly false, it was given by the bankrupt for the express purpose of obtaining credit, and he obtained credit. The bankrupt's attempt to explain away the overstatement of assets by showing that he had other assets which he deliberately omitted, cuts both ways. If, as the bankrupt says, it shows that he was worth more than he disclosed and that, therefore, he had no intent to deceive (a conclusion we cannot accept), it also shows that he deliberately misrepresented assets by concealment as well as by overstatement, which makes the statement even more materially false.

It was precisely such a defense that Judge L. Hand put to rest when he said in In re Maaget, 245 F. 804:

"(1) I certainly cannot agree with the proposition that a bankrupt or any one else may defend a written statement of his financial condition, merely by showing that the balance is substantially correct, nor does it appear that the learned master so thought. It needs no argument to show that a financial statement, showing assets of $107,000 and liabilities of $63,000, is not a correct statement of a business in which the assets are $157,000, and the liabilities $113,000, any more than, to put extreme cases, it would be a correct statement of a business in which the assets were $57,000 and the liabilities $13,000, or the assets $1,157,000 and the liabilities $1,113,000. Still in each case the surplus is the same. A merchant is concerned, not only with the net surplus, but with its proportion to the liabilities, and everybody knows that who knows anything about financial statements, personal or corporate."

The bankrupt deceived in order to obtain credit—and no more is required to establish culpable intent. Industrial Bank of Commerce v. Bissell, supra.

I agree with Judge Zavatt that this was sufficient to bar discharge, and that the Referee's conclusion was wrong as a matter of law. The Referee's statement that "Despite diligent search by the Court no case has been found which is on all fours with the case at bar," simply overlooks the long respected opinion of L. Hand, J., in In re Maaget (1911) and of this Court in Industrial Bank of Commerce v. Bissell (1955), both of which are "on all fours."