**In the Matter of Zalmen A. DUNN, Bankrupt.**

**Zalmen A. DUNN, Bankrupt-Appellee,**

v.

**Samuel A. ARUTT, Trustee in Bankruptcy, Appellant.**

**No. 426, Docket 34154.**

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1970.

Decided Feb. 20, 1970.

Elias Mann, New York City (Charles H. Weintraub and Levin & Weintraub, New York City on the brief), for bankrupt-appellee.

Jacob F. Gottesman, New York City, for appellant.

Before MEDINA, WATERMAN and SMITH, Circuit Judges.

MEDINA, Circuit Judge:

We are called upon to decide the novel question of whether Dr. Zalmen A. Dunn was "engaged in business as * * * an executive of a corporation" under the 1960 amendment to Section 14(c) (3) of the Bankruptcy Act, 11 U.S.C. Section 32(c) (3), at the time he obtained credit for Mid-Island Dental Supply Corp. ("Mid-Island") by actively participating in a scheme pursuant to which written false statements of its financial condition were made. The referee in bankruptcy found that Dr. Dunn was not so engaged, and the District Court affirmed. We agree with the finding reached below, which is not clearly erroneous. See Gen. Order in Bankruptcy 47; Morris Plan Industrial Bank v. Henderson, 131 F.2d 975 (2d Cir. 1942).

Dr. Dunn, a practicing dentist, was a party to an agreement either with Mid-Island, a seller of dental equipment to doctors and dentists, or with Murry Levy, the president and principal stockholder of Mid-Island, by which Dunn was to encourage outsiders to invest in Mid-Island in return for 10% of its net profits. Dunn owned no stock in Mid-Island and was not one of its directors or officers.

In May, 1963, when Mid-Island was in need of funds, Dunn and Levy allegedly entered into a scheme to obtain credit for the corporation. Pursuant to the plan, Dunn and Levy entered into an agreement in which it appeared that Mid-Island had sold dental equipment valued at $10,002.00 to Dunn. The purported sale was to be financed by the execution and delivery of a chattel mortgage by Dunn to the First National City Bank under which he would pay $10,099.20 to the Bank over a five-year period. The Bank paid $8,498.00 to Mid-Island. The only difficulty with this arrangement was that the dental equipment allegedly sold to Dunn did not exist.

A similar transaction was arranged in September, 1964 by which Mid-Island "sold" non-existent dental equipment valued at $16,196.15 to Dunn under a conditional-sales contract which was assigned by Mid-Island to C.I.T. Corporation. The contract warranted, *inter alia*, that "the property has been delivered to the buyer under the said contract in satisfactory condition * * *." C.I.T. Corporation paid Mid-Island $10,535.50 for the assignment of the contract.

Inevitably business turned sour for Mid-Island, Dunn, and Levy, all of whom were adjudicated bankrupt. Levy, as an officer of Mid-Island, was denied the right to a discharge under Section 14(c) (3) because his role in the fraudulent scheme described above brought him squarely within the terms of the statute.

The referee dismissed that part of Specification 1 against Dunn, involving false financial statements, because he concluded that Dunn was not "engaged in business" as required by Section 14(c) (3). This conclusion was based on two grounds: (1) that a practicing dentist is not a person engaged in business within the meaning of the Act, see In re Cristo, [1962–1966 Transfer Binder] Bankr.L.Rep. ¶61,511 (E.D.N.Y. 1965) and (2) that Dunn was not an officer, stockholder or "executive" of Mid-Island. Since we agree with the referee that Dunn was not an "executive" of Mid-Island, we express no opinion on the subject of whether the mere fact that the bankrupt is a practicing dentist is

sufficient to make the statute inapplicable as to him.

In construing Section 14(c) (3), we must keep in mind that the amendment which added the "engaged in business" requirement was intended to protect debtors from harassment and oppression by creditors and thus should be construed liberally in favor of the bankrupt. See S.Rep.No. 1688, 86th Cong., 2d Sess. 1–3 (1960); H.R.Rep.No. 1111, 86th Cong., 1st Sess. 2–3 (1959); In re Ostrer, 393 F.2d 646 (2d Cir. 1968). Applying this guideline, we cannot see how Dunn can be considered an "executive" of Mid-Island under any reasonable reading of the statute. He owned no stock and held no position of policy-making authority in the corporation; his status was that of an independent contractor who was to raise funds for the corporation. Cf. In re Lepley, 227 F.Supp. 983 (W.D.Wis.1964). Moreover, the transactions in which Dunn engaged were outside the scope of his contractual undertaking.

The argument raised by counsel for the trustee on oral argument that Dunn was engaged in business for himself as a fund-raiser has no merit. However fraudulent Dr. Dunn's activities were, this contention would have us bootstrap these activities into a business enterprise. The principal defect in appellant's argument, however, is its disregard of the statutory language. The statute denies the right to a discharge to a bankrupt who "while engaged in business as a sole proprietor * * * or as an executive of a corporation, obtained for *such business* money or property on credit * * * by making or publishing or causing to be made or published * * * a materially false statement in writing respecting his financial condition or the financial condition of such * * * corporation" (emphasis added). The focus of the statute, therefore, is on the business sought to be benefited. The manifest purpose of the scheme in which Dunn and Levy were engaged was to obtain money on credit for Mid-Island, not for any sole-proprietary fund-solicitation "business" in which Dunn may have been engaged.[1] In furtherance of this plan it was the financial condition of Mid-Island, not of Dunn or any "business" conducted by him, that the referee found to be falsified. Once it is concluded that Dunn was not an "executive" of Mid-Island, Section 14(c) (3) of the Bankruptcy Act is inapplicable to prevent a discharge.

The trustee has informed us that he has reserved for adjudication before the referee pending the outcome of this appeal his other specifications of objections to the discharge of Dr. Dunn. So we think it proper to state that the affirmance of the order appealed from is without prejudice to the pursuit by the trustee of objections to discharge of the bankrupt based upon any existing alternative grounds.

Affirmed.

---

1. Compare Swint v. Robins Federal Credit Union, 415 F.2d 179, 182 (5th Cir. 1969); Clancy v. First National Bank, 408 F.2d 899 (10th Cir. 1969), aff'g 279 F.Supp. 820 (D.Colo.1968), cert. denied, 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969); In re Branch, 242 F.Supp. 534 (E.D. Tenn.1964), aff'd per curiam sub nom. Branch v. Mills & Lupton Supply Co., 348 F.2d 991 (6th Cir. 1965), cert. denied, 382 U.S. 997, 86 S.Ct. 584, 15 L.Ed.2d 484 (1966); In re Doyle, 272 F.Supp. 35 (S.D.N.Y.1967).