**In the Matter of Levander Vert HIPPLER, d/b/a Van's Shoe Store, Bankrupt.**

**No. 16338.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Feb. 1, 1968.

John S. Pickett, Jr., Many, La., for bankrupt.

Robert E. Eatman, Shreveport, La., for trustee.

John A. Richie, Shreveport, La., for creditor (Uniroyal).

### RULING ON REVIEW FROM REFEREE'S DENIAL OF OPPOSITION TO DISCHARGE

BENJAMIN C. DAWKINS, Jr., Chief Judge.

United States Rubber Company (hereinafter "Uniroyal"), as a creditor of the bankrupt, filed this petition for review of the Referee's decision rejecting its objection to the bankrupt's discharge. Facts giving rise to this dispute may be quickly set forth.

Sometime in early 1966, Hippler, the bankrupt, decided to go into the retail shoe sales business for himself, and on or about January 25, 1966, submitted what was called a "financial statement" [1] to Dun & Bradstreet. To say this statement was erroneous is putting it mildly. When it was issued, Hippler had total assets of $16,000.00 compared with $50,-500.00 as shown on the statement as *estimated* assets as of February 1, 1966.

Hippler previously had discussed the possibility of opening a shoe store in Many, Louisiana, with one of Uniroyal's shoe salesmen, Newton Beck. After

---

1. See Exhibit P-3.

negotiations, business actually began in late March, 1966. Open account credit was extended to Hippler for shipment sent to his store. Needless to say, the business was not as successful as planned, and Hippler closed the store and filed a petition in bankruptcy October 6, 1966.

Section 14(c) (3) of the Bankruptcy Act (11 U.S.C. § 32(c) (3)) forms the basis for Uniroyal's opposition to the discharge granted by the Referee. It provides:

"(c) The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation * *."

Without belaboring the point, it is Uniroyal's contention that Hippler gave the erroneous financial statement intentionally for the purpose of fraudulently deceiving Uniroyal so that it would extend credit to him in his purchase of shoes manufactured by that company.

Contradictorily, Hippler contends that the . statement was an *estimated* total worth condition, an expectation as of February 1, 1966. He further testified that the statement was definitely not given with the expectation that credit would issue from its contents, and that at the time he submitted the statement he certainly did not believe any portion to be false.[2]

After careful study of the case and having had the benefit of observing the witnesses and judging their credibility,

as given in bankruptcy court, the able and experienced Referee found:

"Hippler's testimony as to why he put down certain figures is almost ludicrous to a man versed in business; however, it is the opinion of this Court that at the time that he gave the financial statement he did not believe it false and certainly did not intend to deceive. This financial statement is so completely erroneous and so stupidly devised that it could not possibly have been given with the purpose of defrauding someone. This is one case where we cannot reasonably conclude that fraud was intended."

Moreover, the inexperience of the bankrupt, who was a man of only 21 years with one year of college, was known to all parties, including Uniroyal.

To successfully object to a discharge under § 14(c) (3) of the Act, the creditor urging the objection must prove that the bankrupt:

"(1) obtained money or property on credit or an extension or renewal of credit; (2) that he did so on a materially false statement representing his financial condition; (3) that such statement was in writing; (4) that the statement was made or published, or caused to be made or published by the bankrupt or someone duly authorized by him; and (5), under the 1960 amendment, that the bankrupt was engaged in business and the money was obtained for the business. *The determination of a case will often depend largely on its own particular facts.*" Collier on Bankruptcy, ¶ 14.36 (Emphasis added).

As noted, the only issue in this case concerns whether the bankrupt fraudulently issued a materially false statement concerning his financial condition, with intent to deceive. In this

2. See Transcript of Bankruptcy Proceedings, pp. 20–26. While not discussed in this opinion or in the opinion of the Referee, the very poor procedures employed by Uniroyal with reference to stopping or altering certain orders placed by Hippler after his express request to so terminate or alter is vividly illustrated by Uniroyal's own employee, Newton Beck. See Transcript, pp. 70–73.

connection, the well established rule, applicable here, is as follows:

"Intent; Meaning of Word 'False.'"

"It has been held that an intent to defraud is essential; the word 'false' means more than erroneous or untrue and imports an intention to deceive, and a materially false statement in writing must have been knowingly or intentionally untrue to bar a discharge. Intention to deceive is always material as an element of proof, and, by the weight of authority, such intent is an essential element." Collier on Bankruptcy, ¶ 14.40.

 Having exhaustively reviewed the record as a whole, and keeping in mind that findings of fact made by the Referee are to be set aside only where they are clearly erroneous, we find ourselves in complete accord with the findings of the Referee here.[3] We already have emphasized his findings as to the lack of fraudulent intent on the part of the bankrupt, as well as his known inexperience (*known to Uniroyal*) in the retail shoe business.

An even casual reading, by any layman, of the statement issued to Dun & Bradstreet clearly would show that Hippler was not a businessman equipped with even the slightest knowledge of financial statements. Surely, the credit department of a corporation of the stature of Uniroyal, by merely glancing at the "financial statement," would have concluded that it could not be relied upon, in good faith, to issue credit in such large amounts as were extended to Hippler, even after it received notice of his bankruptcy.

We are not dealing here with an unsophisticated supplier of goods, and we feel that the Referee reached an alto-

gether reasonable conclusion in light of the fact that Uniroyal is a nationwide merchandiser, fully equipped with every possible resource properly to issue credit. Indeed, as we have noted, the statement itself clearly establishes that it was an *estimated* declaration of condition as of February 1, 1966, and was not represented as a complete picture of current status based upon business records.

Uniroyal has failed completely to establish that the financial statement was issued by the bankrupt with intent to defraud; and, indeed, the bankrupt has shown, more than adequately and by a preponderance of the evidence, that he had no such intent. The ruling by the Referee is in all respects affirmed.

---

3. We are fully cognizant of the fairly recent decision by the Court of Appeals of this Circuit (Fidelity & Deposit Co. of Maryland v. Browder, 291 F.2d 34 (5th Cir. 1961)) denying discharge under § 14(c) (3); but we find that case clearly distinguishable from this one in that there it was abundantly shown that the bankrupt's false statements obviously

were deliberately made with intent to deceive, by a highly experienced business man, whereas here the so-called "false statements," made by a young, inexperienced business novice, were based upon youthful hopes—which, as the record plainly shows, simply did not materialize. This, clearly, is a question of fact—not law.