In the Matter of Albert Lamar
FLEMING.

No. 3106.

United States District Court,
S. D. Mississippi, S. D.

Oct. 17, 1972.

Robert E. Hauberg, U. S. Atty., Joseph E. Brown, Jr., Asst. U. S. Atty., Jackson, Miss., for appellant Small Business Administration.

John H. Barnett, Jr., Gulfport, Miss., for appellee.

NIXON, District Judge.

This case is before this Court on a Petition filed by the United States of America on behalf of its agency, Small Business Administration (SBA), seeking reversal of so much of an Order of the Referee in Bankruptcy which awarded discharge to Albert Lamar Fleming, hereinafter referred to as the "bankrupt". Although the objecting creditor, SBA, which is a scheduled creditor and a proper party to file Specifications of Objection herein, opposed granting of discharge to both bankrupts, Albert Lamar Fleming and his wife, Gloria Kislanko Fleming, the Specifications relate only to Albert Lamar Fleming, and the United States Attorney announced to the Bankruptcy Court that the discharge of Gloria Kislanko Fleming was not opposed.

SBA's Specifications of Objection to Discharge were timely filed and the Petition for Review was filed within the 10 day period provided in § 39(c) of the Bankruptcy Act.

██ The sole basis relied upon for objection to the discharge granted by the Referee at the hearing by the petitioner, SBA, is that the bankrupt had acquired a loan of money for use in his business as the result of (1) a materially false statement in writing respecting his financial condition which accompanied his application and (2) a false statement made by him when he signed the Certification and Receipt of the loan funds when they were disbursed on January 8, 1971, in violation of § 14(c)(3) of the Bankruptcy Act, 11 U.S.C. § 32(c)(3).[1]

SBA first contends that the bankrupt, while engaged in business as a sole pro-

prietor, obtained money on credit for use in his business by making and publishing a written materiall false financial statement at the time that he applied on September 22, 1970 for a loan of $30,000 to be used by him in his feed and seed business. This statement, dated September 17, 1970, showed Fleming's liabilities to be $70,999.51 and his net worth $48,-530.81. Under the terms of the application, the loan was to be made by the Bank of Leakesville, and guaranteed by SBA to the extent of 90%. The application was approved in due course and the loan proceeds were disbursed on January 8, 1971. On March 26, 1971 the bankrupt filed his March 24 Petition in the Bankruptcy Court listing his total liabilities of $157,573.07 and assets of $51,-944.20, or a net worth of minus $105,-628.87.

██ At the time of disbursal of the loan proceeds, the bankrupt signed a "Certification and Receipt" on SBA Form 740, on which, in addition to acknowledging receipt of the loan, he stated that "for the purpose of inducing SBA directly or through the Bank of Leakesville, participating bank, to disburse the above loan . . . the bankrupt certifies (1) that there had been no substantial adverse change in the financial condition since the application for this loan was filed . . . and (2) that there are no liens or encumbrances against the real or personal property securing said loan except those referred to and disclosed in the application for this loan." This Receipt and Certification was properly received in evidence by the Referee over the objection

---

1. The petitioner herein, SBA, apparently seeks to object to the discharge of the bankrupt on two additional bases which were never urged during the trial of this matter in the Bankruptcy Court or at any other time until mentioned on page seven of the objector's undated memorandum brief filed with this Court long after the Referee's Certification of Review to this Court, namely, (1) failing to explain satisfactory losses and deficiencies of assets in violation of § 14(c)(7) and (2) failing to keep books of account or records from which the financial condition and business transactions might be ascertained in violation of § 14(c)(2). Al-

though the Government contends that Civil Rule 15, Federal Rules of Civil Procedure, would permit it to inject these additional bases for objection to discharge, these matters were never raised by it during the trial of this matter, the bankrupt was never given notice of any such contentions and no mention thereof was made in the Government's proposed Findings and Conclusions filed with the Referee pursuant to his request. Therefore, this Court as a matter of law and equity, determines that the sole and only question presented in this review is whether § 14(c)(3) precludes the bankrupt's discharge.

of the bankrupt, (a) inasmuch as it has a direct relevant and material bearing on whether the bankrupt's financial statement attached to his application for the loan was materially false and made with intent to deceive the SBA and (b) because it was offered as an additional Sub-Specification of Objection on ore tenus Motion to Amend during the hearing, which was never ruled upon by the Referee, but which should be granted, because that General Order 37 makes the Federal Rules of Civil Procedure applicable to bankruptcy proceedings to the extent that they are not inconsistent with the Bankruptcy Act or the General Orders. *In re Sturdevant*, 415 F.2d 465 (5th Cir., 1969).

In order to successfully object to a discharge under § 14(c)(3) of the Act, the creditor urging the objection must prove that the bankrupt:

"(1) obtained money or property on credit or an extension or renewal of credit; (2) that he did so on a materially false statement respecting his financial condition; (3) that such statement was in writing; (4) that the statement was made or published, or caused to be made or published by the bankrupt or someone duly authorized by him; and (5) under the 1960 amendment, that the bankrupt was engaged in business and the money was obtained for the business. The determination of a case will often depend largely on its own particular facts." Collier on Bankruptcy, ¶ 14.36.

On September 14, 1971 the Referee entered an Order overruling the SBA's Specification of Objection to Discharge, in which he held "that there was no evidence to support a finding that the bankrupt had any intention to deceive the objecting creditor or that he committed any act of dishonesty or fraud in his procurement of the loan," and "that the decision to extend credit to the bankrupt was made in reliance on considerations other than the financial statement in question and that SBA recognized certain elements of the financial statement in question were in error prior to ap-proving the loan." Thus he awarded the bankrupt a discharge pursuant to the provisions of the Act. The SBA filed its Petition for Review herein on September 24, 1971 assigning 14 errors allegedly committed by the Referee, and praying for a review and reversal of his order; in the alternative, it asks this Court to remand this cause to the Referee for further appropriate proceedings in accordance with the Bankruptcy Act, the General Orders, and the Federal Rules of Civil Procedure.

■ Subsequent to the filing of the Petition for Review, and apparently in response thereto or in order to correct some of the alleged deficiencies in his previous Order complained of in the Petition, the Referee filed written additional findings and conclusions entitled "Ruling of Court". His Certificate of Review is dated the following day, November 30, 1971. The Government on behalf of SBA, on page three of its Memorandum filed with this Court, alleges that the above additional findings and conclusions of the Referee were made without any notice whatsoever to the petitioning objector and were discovered when one of the attorneys for the Government had occasion to examine the Court file. The Government, while expressly stating that it in no way was attempting to impugn the character, motives or integrity of the Referee, condemns this procedure as being violative of both the letter and spirit of § 39 of the Bankruptcy Act and asks this Court to totally disregard these findings and conclusions inasmuch as § 39(c) of the Act requires the aggrieved party to set forth in his Petition for Review the alleged errors committed by the Referee, and to allow the Referee to make additional findings and conclusions after the filing of the Petition would work a gross injustice on the petitioner seeking review in face of the "clearly erroneous" standard established by General Order 47. In support of its contention, the SBA cites *In re Peoria Braumeister Co.*, 138 F.2d 520 (7th Cir., 1943) and *In re Woody*, 248 F.Supp. 855 (W.D. Mo., 1966). Although these cases seem-

ingly support the Government's contention herein, this Court chooses to follow what it considers to be the better rule of decision of the Sixth Circuit stated in *In re D.I.A. Sales Corp.*, 339 F.2d 175, 180 (6th Cir., 1964), and apparently applied in *In re Berman & Co.*, 343 F.2d 125, 126 (6th Cir., 1965), approving the inclusion of Findings of Fact and Conclusions of Law in the Referee's Certificate on the Petition for Review. If this Court agreed with the Government's contention, it would simply remand this case to the Referee for additional findings and conclusions which there is no reason to believe would differ from those already made by him. Also, the Government has had adequate opportunity to and has spoken to these challenged findings and conclusions in its memorandum filed with this Court. In addition, this Court does not find anything startling or materially different in the complained of Findings of Fact and Conclusions of Law than is found perhaps in more conclusory or briefer verbage in the Referee's previous Order Awarding Bankruptcy. For these reasons, this Court overrules that part of the Government's January 12, 1972 Motion praying that the Referee's findings and conclusions entered on November 29, 1971 be stricken and purged from the record.[2]

The Referee found that the Government showed the existence of debts owed by the bankrupt which were not listed on his financial statement submitted to the SBA, and thus, that the burden of going forward and proving entitlement to the discharge shifted to the bankrupt (Tr. 15–16). *McCarty v. Small Business Administration*, 420 F.2d 943 (5th Cir., 1970); *In re Sellers*, 295 F.Supp. 1354 (S.D.Tex., 1968), aff'd, 407 F.2d 402 (5th Cir., 1969). After receiving all of the evidence in this case as well as Proposed Findings of Fact and Conclusions of Law submitted by the

parties, the Referee, as stated above, found that Mr. Fleming (1) did not intend to deceive the SBA in connection with the filing of his financial statement with the application for the loan or at the time that he executed the Certification and Receipt when the loan proceeds were disbursed approximately three months later, and (2) that the SBA did not rely upon the bankrupt's financial statement or the Certificate and Receipt, and thus made the loan with "total disregard" therefor.

Thus, the question before this Court is whether both of the above findings and conclusions of the Referee were clearly erroneous. If they were, this Court must reverse, and if they were not, this Court must affirm. *Wolfe v. Tri-State Ins. Co.*, 407 F.2d 16 (10th Cir., 1969), reh. den.; *Baash-Ross Tool Co., et al. v. Stephens*, 73 F.2d 902 (9th Cir., 1934).

The initial inquiry is whether the Referee's ruling that the bankrupt did not fraudulently issue a materially false statement concerning his financial condition or later certify and receipt for the disbursal of the loan with intent to deceive is clearly erroneous. The well-established rule which is here applicable is:

"Intent; Meaning of word 'False.'

It has been held that an intent to defraud is essential; the word 'false' means more than erroneous or untrue and imports an intention to deceive, and a materially false statement in writing must have been knowingly or intentionally untrue to bar a discharge. Intention to deceive is always material as an element of proof, and, by the weight of authority, such intent is an essential element." Collier on Bankruptcy, ¶ 14.40; see *In re Hippler*, 278 F.Supp. 753, 755 (W.D.La., 1968).

The bankrupt, Albert Lamar Fleming, was the sole owner of the only feed and

---

**2.** The Referee has complied with that part of the Government's Motion requesting that this Court require him to file a Supplemental Certificate submitting the Petition and Schedules of the bankrupt which were considered by him and were not included in the matters certified on review, by filing an Amended Referee's Certificate of Review on February 7, 1972 with the bankrupt's Petition and Schedules which were filed with him on March 26, 1971.

seed store in the rural town of Leakesville, in agriculturally oriented Greene County, Mississippi. The farming area around Leakesville had experienced three bad corn crop years because of a blight, and in 1970 there was a severe epidemic of hog cholera, all of which resulted in Fleming's business suffering a critical shortage of operating funds. Therefore, a representative of Ralston-Purina Company and the president of the Bank of Leakesville, with which Fleming had conducted all of his personal and business banking affairs and which had complete familiarity with his accounts, outstanding loans as well as access to all of his books and records, suggested that he refinance his business by obtaining an SBA guaranteed loan from the bank. Pursuant to their suggestions, the bank's attorney who was also the bankrupt's attorney prepared the application form for the $30,000 loan in question to be used by the bankrupt in his feed and seed business. The financial statement attached to the application was also prepared by the bank's president and attorney based on information furnished by Fleming.

The loan application and attached financial statement were reviewed by Mrs. Betty F. Watkins, an eleven year employee and loan officer of SBA, Gulfport, Mississippi, who after several discussions concerning various features of the application with Fleming and conferring with Bank of Leakesville officials, forwarded the instruments to her superior in the Jackson, Mississippi office of SBA recommending approval, which subsequently followed.

Mrs. Watkins recognized that the financial statement was sketchy and incomplete inasmuch as there was no listing of open accounts payable or mortgages on land; and the total liabilities were shown to be a $27,424.02 SBA mortgage loan, and a $10,475.49 second SBA mortgage loan, a mortgage on his home and lots in the amount of $8,100, and "all other debts" which amounted to $25,000, constituting total liabilities of $70,999.51 (see Exhibits "A" and "B" at Tr. 12).

Actually, Mr. Fleming's liabilities at the time that he applied for the loan in question, as reflected in the schedule attached to his Petition for Bankruptcy filed herein and as testified to by him in the Bankruptcy Court were: $28,406.01 to Swift Agricultural Chemicals; Lapeyrouse, $2,015.53; Ralston-Purina Company, $10,217.32; two secured SBA loans with the Bank of Leakesville, in the approximate amounts of $28,000 and $10,475.49; approximately $14,000 in unsecured loans from The Bank of Leakesville; two note balances of approximately $3,000 secured by a mortgage on a Dodge Polara automobile; and approximately $1,300 secured by a mortgage on a large pick-up truck (See Tr. 12–13, 17–21).

In addition to the September 17, 1970 financial statement, Mr. Fleming, pursuant to the request of Mrs. Watkins of the SBA, submitted some earnings statements of previous years, which she had in her file in Gulfport but which she did not have in her possession at this hearing and did not produce. Although Mrs. Watkins testified that these statements indicated to her that the bankrupt expected to make a profit for the next year, she admitted that they showed substantial losses for the previous years (Tr. 35). She further admitted that she knew that the bankrupt had approximately $6,000 in open accounts payable, but that since the loan applied for was to be a working capital loan this did not greatly concern her, despite the fact that she recognized that this was not specifically reflected in the financial statement (Tr. 36–37). Mrs. Watkins further admitted that she does not recall specifically what records were delivered to her by Mr. Fleming during their several conversations concerning the loan application, but since this was a bank loan, much of her discussions were with the bank, on which she customarily relied for certain information (Tr. 31–33). She recognized the inaccuracy or unreliability of the financial statement in regard to open

accounts payable and mortgages on the land which Fleming left blank, but attempted to explain this by testifying: "Well, I might add, as many financial statements that we work from, we become accustomed to people filling them out that are not aware of where different things go." (Tr. 38). She also recognized the unreliability of the accounts receivable figure of $22,972.77 shown on Fleming's financial statement, because they were due from farmers who had no way of paying unless they could get credit for feed and seed to be utilized by them the following spring when they could harvest a crop (Tr. 39–40).

On January 8, 1971, the bankrupt signed SBA Form 740, Certification and Receipt, contemporaneously with and as a prerequisite to the disbursal of the $30,000 loan proceeds, certifying that there had been no substantial adverse change in his financial condition, organization, operations or fixed assets since the application for the loan was filed and that there were no liens or encumbrances against the real or personal property securing the loan except those referred to and disclosed in the application therefor. It is undisputed that on November 30, 1970, between the times that the bankrupt filed his application for the loan and executed the Certification and Receipt, he assigned all of his open accounts payable, amounting to approximately $19,000, to Swift Agricultural Chemical Corp., as reflected in the schedule attached to his Petition requesting that he be adjudged a bankrupt. When asked by the United States Attorney for an explanation of his failure to apprise SBA of this assignment, and certifying to the contrary, the bankrupt answered: "I don't guess I was thinking, Sir." (Tr. 26–27).

Although the Government failed to elicit testimony of the SBA officer who approved the loan in question, it did produce Mrs. Watkins who testified that she relied on the accuracy of the financial statement in recommending approval of the loan, and that she would not have made this recommendation if the liabilities of Mr. Fleming were substantially in excess of those shown thereon. Nevertheless, she readily conceded that she knew that this loan was "quite marginal" at the time of her recommendation, that the bankrupt was faced with "a critical situation" at that time, that his cash holdings were practically nil, that feed and seed stores are vital to the welfare of an agricultural community, and that SBA's primary function is to help small businesses, particularly when their failure would cause an economic injury, which plaintiff's would since his was the only general feed and seed store in an agriculturally oriented community (Tr. 31, 33–34).

The Referee found that the bankrupt did not by any of his actions, intend to deceive the SBA concerning his financial condition; that "although SBA presented some proof concerning the falsity of the financial statement in question, that the evidence failed to show that their reliance on the statement induced them to guarantee the loan." He adopted all of Mrs. Watkins' testimony and concluded that SBA did not rely in whole or in part on Fleming's financial statement but resolved to guarantee the loan on factors and considerations totally independent of it; that the evidence clearly showed SBA's willingness to accept the loan notwithstanding the risk · demonstrated by the financial statement and it "is absurd to even suggest that the financial statement was a factor or a partial factor in inducing extension of credit in this case."

This Court, having reviewed the entire record and being conscious of the applicable rule that findings of fact made by the Referee are to be set aside only where they are clearly erroneous, is of the opinion that it must affirm the ruling of the Referee, who found that the bankrupt proved by a preponderance of the evidence that he lacked fraudulent intent, particularly in view of the fact that he was the owner of a feed and seed store in a small rural community and that this Small Business Administration, an agency of the United ·States

Government, fully equipped with every possible resource properly to issue credit and to investigate the financial condition of one applying for a loan, apparently made no real effort to determine the correctness of the financial statement or the Certification and Receipt in question, despite the fact that over three months expired between the application for the loan and the actual disbursal of the funds. In *In re Hippler, supra,* at page 755, the United States District Court for the Western District of Louisiana alluded to this same type situation as follows:

"We are not dealing here with an unsophisticated supplier of goods, and we feel that the Referee reached an altogether reasonable conclusion in light of the fact that Uniroyal is a nationwide merchandiser, fully equipped with every possible resource properly to issue credit. Indeed, as we have noted, the statement itself clearly establishes that it was an estimated declaration of condition as of February 1, 1966, and was not represented as a complete picture of current status based upon business records.

"Uniroyal has failed completely to establish that the financial statement was issued by the bankrupt with intent to defraud; and, indeed, the bankrupt has shown, more than adequately and by a preponderance of the evidence, that he had no such intent. The ruling by the Referee is in all respects affirmed."

The bankrupt's records and financial picture were well known to the Bank of Leakesville, whose president suggested to Mr. Fleming that he apply for this loan.[3] Mrs. Watkins, SBA's employee who recommended approval of the loan, testified that she had most of her discussions concerning Fleming's financial condition with the bank, which certainly had knowledge of most, if not all, of his liabilities. Fleming was not clever or canny enough to devise or prepare a finan-

cial statement which could mislead an agency of the United States Government. This Court cannot say that the finding of the Referee that the bankrupt did not intend to deceive the SBA was clearly erroneous in view of the fact that the Referee, as the finder of fact, had the opportunity to observe his demeanor, intelligence and sincerity on the witness stand, the sketchiness of and very apparent deletions and inaccuracies in his financial statement which were quite evident to Mrs. Watkins by her own admission. Thus, this Court finds that the Referee's finding and conclusion that the bankrupt met his burden of proving the absence of any intent to defraud or deceive the SBA was not clearly erroneous. See *Wolfe v. Tri-State Ins. Co., supra; Baash-Ross Tool Co., et al. v. Stephens, supra.*

■ Likewise, this Court is of the opinion that the Referee's finding that the bankrupt proved by a preponderance of the evidence that SBA did not rely in whole or in part upon the written financial statement in question or any other written instrument executed by the bankrupt, is not clearly erroneous in view of all the facts and circumstances outlined above, which this Court will not repeat but which were also fully set forth in the findings of fact and conclusions of law reached by the Referee in his Opinion and subsequent "Ruling", which this Court adopts as both correct and sound. *Cf. Household Finance Corp. v. Groscost,* 230 F.2d 608, 609 (6th Cir., 1956) in which the Court of Appeals stated:

"The Referee found from the evidence that, in fact, the finance company did not rely upon the financial statements in question, having dealt with the bankrupt husband and wife for a period of five years with the result that the company knew, or should have known, the financial condition of the bankrupts. The district

---

**3.** The purpose of the loan in question was to pay the Bank of Leakesville the $10,475.49 SBA guaranteed loan and approximately $10,- 000 of unsecured loans owed to it by him, which amounts were paid by the bankrupt from the loan proceeds (Tr. 6).

judge affirmed the ruling of the Referee, thereby making the findings concurrent.

"Accordingly, upon the reasoning disclosed in the Certificate of Review filed by the Referee, and upon the basis of his findings and conclusions sustained by the evidence and upheld by the district judge, the judgment is affirmed."

In *Wolfe v. Tri-State Ins. Co., supra,* at page 20, the Court alluded to the salutary purpose of the Bankruptcy Act in the following language:

". . . The primary purpose of the Act is to give an unfortunate businessman, who has failed, a chance to start anew, a chance to profit by his own mistakes. Otherwise, he could hardly engage in business at all. The bankrupt may have, and usually has, made mistakes. Mistakes are inevitable, but may be corrected, and knowledge gained thereby."

This Court, based upon exhaustive review of the entire record before it, keeping in mind that questions of this type are for the most part questions of fact and that the Referee's findings of fact, based on its observations of the witnesses as the "Trial Judge" of these matters, are to be given great weight and that he is not to be reversed unless his findings are clearly erroneous, agrees with his determination that § 14(c)(3) of the Act did not bar the bankrupt's discharge for both of the reasons stated.

The Petitioner herein contends that the Referee based his findings upon an erroneous assumption that it had the burden of proving the ground upon which it relied in opposition to the discharge in bankruptcy, whereas the evidence and the circumstances of this case shifted the burden of proof to the bankrupt. This Court does not find any merit in this contention. Although the Referee might not have phrased his opinion and ruling as clearly as he could have, this Court finds that he applied the correct test or standard, which is evident from reading page 16 of the transcript where he found that the SBA had "made out a prima facie case requiring the bankrupt to go forward."

For the foregoing reasons, this Court affirms the Referee's findings that the bankrupt has sustained his burden of proving that he is entitled to a discharge in bankruptcy, and is not precluded therefrom by § 14(c)(3) of the Act.

