### In the Matter of William K. McGRATH, Bankrupt.

### Bankruptcy No. 78 B 886.

United States Bankruptcy Court, S. D. New York.

Dec. 19, 1979.

Herbert Adler, New York City, for David E. Walters.

Ira H. Leibowitz, Garden City, N. Y., for bankrupt.

## DECISION ON COMPLAINT OF DAVID E. WALTERS OBJECTING TO BANKRUPT'S DISCHARGE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Plaintiff, David E. Walters, has filed a complaint against the bankrupt, who was president of Sound Yachts Inc. [a bankrupt corporation] for inducing plaintiff to extend credit based upon the bankrupt's publication of a materially false financial statement within the meaning of § 14c(3) of the Bankruptcy Act. The bankrupt, William K. McGrath, has denied the allegations in the complaint. The matter came on for trial, at which time both parties testified and introduced evidence, resulting in the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The bankrupt filed a voluntary petition in bankruptcy on May 15, 1978 and was thereupon adjudicated a bankrupt.

2. The bankrupt is the president and the sole shareholder of Association Management Services, Inc.

3. The bankrupt, as an executive of and sole shareholder of Association Management Services, Inc., entered into an agreement with the plaintiff whereby Association Management purchased the stock of Sound Yacht Basin, Inc. from the plaintiff.

Subsequently, Sound Yacht Basin, Inc. purchased the stock of Sound Yachts, Inc. from the plaintiff.

4. The purchase agreement, which was personally guaranteed by the bankrupt, called for a downpayment of $50,000 in cash and the balance to be paid on a $55,000 promissory note.

5. The plaintiff alleges that the agreement was entered into based upon the bankrupt's publication of a materially false financial statement. Specifically, plaintiff alleges that the bankrupt misrepresented his assets by approximately $60,000 through the following notations on the financial statements:

(a.) The bankrupt listed as an asset, securities—not readily marketable—$60,000.

(b.) In No. 4 of the Supplementary Schedules, the bankrupt stated that he owned 900 shares of stock in Association Management Services, Inc., whose cost had been $60,000, whose book value was $60,000 and whose market value was unknown.

6. At trial, plaintiff testified that he asked the bankrupt for a financial statement and that it was subsequently supplied. Plaintiff further testified that he questioned the bankrupt with respect to a number of the items listed on the statement. Apparently, plaintiff was satisfied, and subsequently entered into the purchase agreement.

7. The bankrupt testified that the $60,000 cost represented the amount of money that he would have to invest in Association Management in order to realize a $60,000 profit. In addition, the bankrupt testified that the book value represented nothing more than good will.

8. Plaintiff's claim with respect to the outstanding balance under the note amounts to $43,706.

9. I find that plaintiff has failed to establish by a preponderance of the evidence that the bankrupt issued a materially false statement in writing with respect to his financial condition or that the bankrupt made any false representations with respect to the transaction in question.

10. I further find that the reference to market value of the securities as being unknown was sufficient warning to the plaintiff that the market value of the securities was not represented to be $60,000 and that further investigation was necessary in order to determine the actual value. The statement as to a $60,000 cost in and of itself, does not constitute a representation as to the market value of the securities. Thus, no potential investor could reasonably rely upon the cost figure, even if accurate, to ascertain the market value.

11. There was no evidence that the plaintiff ever inquired as to the factors which were used to arrive at the cost of the securities, nor was there any evidence that the plaintiff was informed as to when the cost was incurred.

## DISCUSSION

Section 14c(3) of the Bankruptcy Act states:

"The court shall grant the discharge unless satisfied that the bankrupt has . . . while engaged in business . . . as an executive of a corporation, obtained for such business . . . property on credit . . . by making or publishing . . . a materially false statement in writing respecting his financial condition . . . .".

11 U.S.C. § 32c(3) (repealed 1979).

In order to object to a bankrupt's discharge, a creditor must prove: That the bankrupt obtained property on creditor, that the bankrupt did so based on a *materially false statement* representing his financial condition [emphasis added], that such statement was in writing, that the statement was made by the bankrupt, and that the bankrupt was engaged in business. 1A *Collier on Bankruptcy* pp. 1381–82, § 14.36 (14th ed.).

In this case, the sole question to be determined is whether the representation on the bankrupt's financial statement was materially false?

"The false statement in writing which is enough to deny a discharge implies a statement knowingly false, or made recklessly, without an honest belief in its truth, and with a purpose to mislead or deceive, and thereby obtain from the person to whom it is made property upon a credit."

*Firestone v. Harvey,* 174 F. 574, 577 (6th Cir. 1909); See In re *Frumpkin,* 82 F.2d 290 (2d Cir. 1936). The plaintiff must establish that the bankrupt made the representation with the knowledge that it was false, that the representation was made with the intention to deceive the plaintiff, and that the plaintiff relied on the representation. *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540 [W.D.Va.1967]. In other words, the plaintiff must prove that the material misstatement as to the bankrupt's assets was made with a fraudulent intent. *In re O'Callaghan,* 199 F. 662 (D.C.Mass.1912); 1A *Collier on Bankruptcy,* p. 1400, § 14.40 (14th ed.).

In *In re Ostrer,* 393 F.2d 646 (2d Cir. 1968) the bankrupt's financial statement failed to list a contingent liability of $90,000, failed to include assets in the amount of $260,000 and overstated the value of other assets. The court stated, "A financial statement which is merely erroneous but is not prepared with any intention to deceive is not a false statement within the meaning of § 14c(3)." *In re Ostrer,* 393 F.2d at 649. In addition the court, citing In re *Tabibian,* 289 F.2d 793, 795 (2d Cir. 1961) stated, "In weighing the facts put forward in a contest over a discharge * * * a court should keep in mind the beneficial policy allowing the honest debtor to get a new start in business and life—and should construe § 14 strictly against the objectors and liberally in favor of the bankrupt." 393 F.2d at 649.

In *Clancy v. First National Bank of Colorado Springs,* 408 F.2d 899 (10th Cir. 1969), cert. denied 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969), the bankrupt submitted to the bank a misleading financial statement in order to get an unsecured loan. However, three days earlier the bankrupt had acquired liabilities of $150,000 which he did not list on the financial statement. In addition, the financial statement failed to

state that the majority of the assets listed were owned by the bankrupt's wife. The court found that the representations were materially false since the bankrupt was fully aware that he had omitted liabilities and had attempted to paint a good financial picture when he was financially insolvent. 408 F.2d at 903.

*In re Hippler,* 278 F.Supp. 753 (W.D.La. 1968) involved a situation where the bankrupt issued a financial statement listing assets of $50,500 but, in reality, only owned assets worth $16,000. The bankrupt contended that the statement was an estimated total worth. The District Court affirmed the Bankruptcy Judge who had stated, "(The bankrupt's) testimony as to why he put down certain figures is almost ludicrous to a man versed in business; however it is the opinion of this Court that at the time he gave the financial statement he did not believe it false and certainly did not intend to deceive." 278 F.Supp. at 754. The Court held that the financial statement was so completely erroneous that it could not have been given with a fraudulent intent. 278 F.Supp. at 754.

In this case, the bankrupt did not attempt to place any market value on the 900 shares of Association Management stock. Rather, he listed the market value as unknown, but listed the cost and the book value as $60,000. Since it was the market value of the stock at the time of the transaction which would have affected the bankrupt's financial status, it is clear that the representation on the statement was not intended to deceive the plaintiff. Further, it is inconceivable that a sophisticated businessman would reasonably rely upon the statement in question. 278 F.Supp. at 754. As was stated by the court in *Kentile Floors v. Winham,* 440 F.2d 1128, 1131 (9th Cir. 1971), ". . . whatever reliance (the creditor) placed upon these statements was not a reasonable reliance . . .". *In re Danesi, Sr.,* 1 B.R. 234 (U.S.B.Ct., S.D. N.Y., 1979).

## CONCLUSIONS OF LAW

1. The plaintiff has failed to sustain his burden of proof under § 14c(3) that the bankrupt obtained credit through the publication of a materially false financial statement.

2. The plaintiff failed to sustain its burden of proof that the bankrupt intended to defraud the plaintiff when he made the representation in question.

3. The plaintiff failed to sustain its burden of proof that his reliance on the representation in question was reasonable.

4. Having failed to sustain his burden of proof in this action, the plaintiff's complaint is dismissed.