**In re Dale Robert BREWOOD, Debtor.**

**BOATMEN'S NORTH HILLS BANK, INC., Plaintiff,**

**v.**

**Dale Robert BREWOOD, Defendant.**

**Bankruptcy No. 80–20610.**
**Adv. No. 81–0003.**

United States Bankruptcy Court,
District of Kansas.

Nov. 12, 1981.

Douglas L. Bowen, Kansas City, Mo., Lonnie A. Hamilton, Shawnee Mission, Kan., for plaintiff.

Laurence M. Jarvis, Kansas City, Kan., for debtor-defendant.

Henry W. Green, Jr., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on May 12, 1981, upon the plaintiff's Complaint to determine the dischargeability of a debt; or, in the alternative, a reclamation peti-

tion. Plaintiff, Boatmen's North Hills Bank, Inc., appeared by counsel, Douglas Bowen and Lonnie A. Hamilton. Defendant/debtor, Dale Robert Brewood, appeared by counsel, Laurence M. Jarvis. At the hearing, the Court sustained defendant's Motion for a directed verdict on plaintiff's 11 U.S.C. § 523(a)(2)(B) cause of action. The Court found that plaintiff had not sustained its burden of proof. Plaintiff *did not prove* that the defendant had obtained money or extensions of credit by a *materially false*[1] written instrument. (*Journal Entry of May 18, 1981*). At the conclusion of the defendant's case, the Court took under advisement two issues: (1) whether the plaintiff had sustained its burden of proof with respect to its 11 U.S.C. § 523(a)(2)(A) cause of action; and whether a reclamation ought to be granted to plaintiff in the alternative.[2]

## FINDINGS OF FACT

There are no disputes between the parties as to the dates, amounts or security in connection with their eight loan transactions involved herein. Neither do they dispute that defendant received a total of 32 extensions of credit and that collateral was substituted on five of the loans. All other facts are in dispute, however. The Court, after reviewing the pleadings, exhibits, testimony, statements of counsel, and the file herein, finds as follows:

1. That the Court has jurisdiction over the parties and the subject matter.

2. That plaintiff made eight loans to defendant between May 19, 1977, and December 3, 1979. The loans were as follows:

---

1. *The Court found that defendant's partial listing of creditors on plaintiff's credit application did not render the application a materially false written document, since the application asked for credit references, but did not ask for all outstanding debt obligations.*

2. *Plaintiff's complaint also included a § 523(a)(4) cause of action, but at trial, plaintiff formally waived said claim.*

| | DATE | AMOUNT | BALANCE DUE | EXTENSIONS | SECURITY | SUBSTITUTED SECURITY |
|---|---|---|---|---|---|---|
| 1) | 5/19/77 | $11,000.00 | $3,587.79 | 9 | 1977 Ford<br>1968 GMC<br>1965 Stuart | 1976 Ford Pickup [3] (substituted on 10/21/77) |
| 2) | 11/14/77 | $10,000.00 | $2,246.06 | 7 | 1969 Ferrari | 1972 Jaguar *<br>1973 Ford<br>1972 Ford<br>(substituted 11/23/77) |
| 3) | 12/8/77 | $6,000.00 | $3,897.75 | 6 | 1974 Ford<br>1972 Jaguar * | 1975 Lincoln [4]<br>1974 Ford<br>(substituted 3/27/78) |
| 4) | 10/31/78 | $7,000.00 | $6,836.54 | 3 | 1978 Lincoln | |
| 5) | 11/17/78 | $3,500.00 | $3,222.95 | 3 | 1978 Ford LTD | 1978 Ford Fairmont (substituted 3/6/79) |
| 6) | 1/2/79 | $3,000.00 | $2,455.21 | 3 | 1975 Cadillac | 1979 Ford Wagon (substituted 7/20/79) |
| 7) | 5/15/79 | $7,700.00 | $8,422.38 | 1 | 1979 Lincoln | |
| 8) | 12/3/79 | $1,000.00 | $1,066.54 | 0 | unsecured | |
| | | $49,200.00 | – – – – | | Total Principal of Loans | |
| | | | $31,735.22 | | Total balance due on loans (including interest) | |

3. That defendant convinced plaintiff that perfection was unnecessary; and that defendant should keep possession of the certificates of title to allow for rapid turnover or sale of the vehicles. As the vehicles were sold or otherwise disposed of, the parties entered into Substitution Agreements, which allowed the defendant to pledge substitute vehicles as collateral.

4. That for each extension or substitution of collateral, no new money was advanced by the plaintiff to the defendant.

5. That in their initial meeting in April of 1977, defendant advised Frank Romero (senior vice president of plaintiff) that he was a wholesaler and restorer of damaged vehicles. Defendant told Romero that sometimes vehicles were torn down and used as parts for other vehicles. Defendant did not tell Romero that any of the pledged vehicles would be torn down. Defendant always represented, at the time of each loan, extension, or substitution of collateral, that the pledged vehicles were restorable and that he would restore them. Although plaintiff was on notice of the nature of defendant's business, plaintiff never had actual knowledge that any of its collateral was "parted out" or destroyed.

6. That at the time of each loan, extension or substitution of collateral, the defendant expressly represented:

(a) That he was the titled owner of the vehicles;

(b) That the vehicles were in his possession and control;

(c) That the vehicles were free and clear of liens and encumbrances;

(d) That the vehicles had only minor body damage and would be restored;

(e) That the vehicles' fair market value exceeded the amount of the loans they secured; and

(f) That the defendant's financial condition had not changed since his April 19, 1977 application for credit with plaintiff.

7. That the defendant testified that at the time the petition was filed, on July 1, 1980, the 1979 Lincoln was in the possession of Moore Motor Co., and that all other collateral vehicles were no longer in existence.

8. That there has not been a valuation of the collateral vehicles to date.

3. *The 1976 Ford Pickup was substituted for the 1977 Ford.*

4. *The 1975 Lincoln and 1974 Ford were substituted for the 1972 Jaguar.*

## CONCLUSIONS OF LAW

Plaintiff contends that the debt should be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). That section states:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;"

■ Pursuant to Bankruptcy Rule 407, which continues in effect under the Code, the creditor objecting to a discharge has the burden of proving the facts essential to the objection. The creditor must make out a prima facie case. *Johnson v. Bockman*, 282 F.2d 544 (10th Cir. 1960).

The Ninth Circuit adopted a five part test for determining when a debt was nondischargeable under § 17(a)(2). *Matter of Nelson*, 561 F.2d 1342 (9th Cir. 1977); *In re Houtman*, 568 F.2d 651 (9th Cir. 1978).[5] Although this Circuit has not adopted the test, it is a useful guideline. The five elements that the objecting creditor must prove are as follows:

1. That the debtor made the representation;

2. That at the time made, the debtor knew the representation was false;

3. That the debtor made the representation with the intent to deceive the creditor;

4. That the creditor relied on the representation; and

5. That the creditor sustained damage as a proximate result.

The first element of proof is that the debtor made the representation. Courts are split on the issue of whether an implied misrepresentation is actionable under 11 U.S.C. § 523(a)(2)(A). Some hold that an implied representation is actionable if it was knowingly false. See *In re Harris*, 458 F.Supp. 238 (U.S.D.C.Ore.1979), *aff'd*, 587 F.2d 451 (9th Cir. 1978), *cert. den.*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed. 285; *In re Quintana*, 4 B.R. 508, 2 C.B.C.2d 293 (Bkrtcy., S.D.Fla.1980); *In re Brooks*, 4 B.R. 237, 2 C.B.C.2d 312 (Bkrtcy., S.D.Fla. 1980); *In re Stone*, 11 B.R. 209 (Bkrtcy., D.S.C.1981); *In re Pommerer*, 10 B.R. 935, 4 C.B.C.2d 766 (Bkrtcy., D.Minn.1981).

Other courts hold that the false representation must be overt. See *Sears, Roebuck & Company v. Wood*, 571 F.2d 284 (5th Cir. 1978); *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir. 1940), *cert. den.* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1940).

■ This Court has held that an omission is not a false pretense or representation. *In re Lamar*, No. 78–20175 (D.Kan. 7–17–80). There, this Court cited two Tenth Circuit cases for the proposition that an omission did not constitute a materially false written statement under § 14(c)(3) of the Act. *Kansas Federal Credit Union v. Niemeier*, 227 F.2d 287 (10th Cir. 1955); *Wolfe v. Tri-State Insurance Co.*, 407 F.2d 16 (10th Cir. 1969). This Court found that the same rule of law should apply to objections to the dischargeability of a debt procured by false representations or pretenses under § 17(a)(2). Furthermore, given that § 14(c)(3) and § 17(a)(2) are closely related to § 523(a)(2)(B) and § 523(a)(2)(A) under the Code, the Court finds that omissions do not constitute false representations or pretenses under the Code.

■ Plaintiff alleged that defendant made both express and implied misrepresentations. Plaintiff's senior vice president, Frank Romero, testified that at the time of each loan, extension, or substitution of collateral, defendant expressly represented that: he was the titled owner of the vehicles; that the titles were lien free; and

---

5. *Section 523(a)(2)(A) does not substantively change the pre-Code law, except for the addition of "actual fraud". This addition was merely a codification of pre-Code law. See* Neal v. Clark, *95 U.S. 704, 24 L.Ed. 586 (1887). Thus case law construing § 17(a)(2) is persuasive.*

that the vehicles had only minor body damage and would be restored. Defendant urged the Court to find the testimony implausible on the basis that no one would make identical representations in numerous transactions over a two year period. The Court finds Romero's testimony credible, however. Since the alleged representations go to plaintiff's main concern (that it would be fully secured), it is likely that defendant continually reassured plaintiff with such representations.

The evidence shows that some of defendant's express representations were false. The 1972 Ford and 1973 Ford pledged as substitute security for the second loan were owned by L & D Enterprises, and Ford Motor Credit Co. (*Pl.Exs. 16 & 15*). The 1979 Lincoln pledged as security for the seventh loan was owned by Moore Motor Co. (*Pl.Ex. 26*).[6]

The Court finds that some of the pledged vehicles were parted out or destroyed. Defendant admits that none of the pledged vehicles were in his possession on the date he filed the petition.[7] The defendant did not account for the whereabouts of these vehicles. The Court therefore, further finds that the vehicles were not restored as defendant represented.

It has been held that where a debtor misrepresents his intention, then that misrepresentation is an actionable false representation. *In re Miller*, 5 B.R. 424 (Bkrtcy., W.D.La.1980).

This Court thus finds that the defendant made false representations; and that the misrepresentations were made with respect to the seven secured loan transactions; but not with respect to the eighth unsecured loan transaction.

The second element of proof is that the debtor knew the representations were false at the time he made them. After observing the demeanor of the witnesses and substance of the testimony, this Court finds

that the defendant knew at the time of each loan that he would not restore all of the collateral. Furthermore, at the time he substituted the two Fords as collateral for the second loan, this Court finds the defendant knew he was not the titled owner of the vehicles as he expressly represented; and at the time of the seventh loan, the defendant knew he was not the titled owner of the 1979 Lincoln, as he represented.

The third element is whether the debtor intended to deceive the creditor. It has been held that intent to deceive may be inferred from a knowingly made false statement. *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979); *In re Gessler*, 11 B.R. 489 (Bkrtcy., W.D.Wis.1981). This Court finds that the defendant made several knowingly false statements. Thus, this Court finds that the defendant had the intent to deceive plaintiff.

The fourth element is that the creditor relied on the representation. Courts read "reasonable" into the reliance element because on balance, protection of the debtor's fresh start is more important than protection of creditors who act unreasonably. See *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979); *In re Arden*, 2 B.C.D. 204 (D.R.I. 1975); *In re Miller*, 5 B.R. 424, 2 C.B.C.2d 849 (Bkrtcy., W.D.La.1980); *In re Stewart*, 10 B.R. 214, 4 C.B.C.2d 387 (Bkrtcy., C.D. Cal.1981).

Defendant argued that if plaintiff relied on any representations, its reliance was unreasonable. Defendant points to: plaintiff's failure to take possession of the certificates of title; plaintiff's failure to perfect its interest; and plaintiff's failure to update the credit information on defendant. The Court finds the defendant is estopped from such arguments in that plaintiff did not take possession of the titles or perfect them because defendant continually represented that his business had such a rapid turnover of vehicles that perfection

**6.** *Defendant alleged that he had authority to pledge the vehicle for Moore Motor Co. That allegation is unsubstantiated, however.*

**7.** *One vehicle, the 1979 Lincoln, pledged as security for the seventh loan, was in the possession of Moore Motor Co. on the date the petition was filed. The whereabouts of the other vehicles is unknown.*

would be burdensome; and assured the plaintiff its security would be protected by substitutions of collateral.

It has been held that where a debtor's conduct throws a creditor off guard, and causes the creditor to omit inquiry or examination which he would otherwise make, the debtor is guilty of actual fraud. *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir. 1940), *cert. den.*, 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1940).

■ Furthermore, the reasonableness of the creditor's conduct after he has loaned money to the debtor, is irrelevant in that the creditor's reliance must be reasonable at the inception of the loan, extension or renewal. See *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979); *In re Clancy*, 279 F.Supp. 820 (U.S.D.C.Colo.1968), *aff'd*, 408 F.2d 899 (10th Cir. 1969), *cert. den.*, 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969).

At the time of each of the seven secured loans, as well as at the time of the extensions and collateral substitutions, plaintiff believed that its collateral was intact and that defendant's financial condition had not materially changed since April of 1977. Since defendant had requested several substitutions of collateral, this Court finds that plaintiff reasonably believed that its collateral was being restored.

The Court further finds that the defendant's repeated requests for extensions of credit (32 to be exact) were evidence that defendant was bordering on insolvency, thus causing plaintiff to have only two options: (1) to demand immediate payment of the loans; or (2) to grant an extension. It is reasonable to assume that plaintiff realized that calling all the outstanding loans would have been a futile exercise. Therefore, this Court won't allow plaintiff's willingness to extend the loans to defeat a finding that plaintiff's reliance on defendant's representations was reasonable, overall.

■ The fifth and final element of proof is that plaintiff sustained damage as a proximate result of the debtor's conduct. Clearly, defendant owes plaintiff $31,735.22

on the eight loans. However, not all of that amount can be called proximate damage. The eighth loan, given on December 3, 1979, for $1,000.00, with a present balance due of $1,066.54, was unsecured. Since defendant's misrepresentations concerned the ownership, future and condition of the collateral for the seven secured loans, defendant's misrepresentations could not have induced the unsecured loan. Therefore, $1066.54 of plaintiff's damage was not caused by defendant's misconduct.

This Court finds that the defendant's misconduct did proximately cause plaintiff's damage with respect to the seven secured loans. Therefore, this Court grants judgment to the plaintiff. The debt will be non-dischargeable to the extent of the value of the security as of the date of the filing of the petition. (11 U.S.C. § 523(a))

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 and RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.